FILED25 SEP '26 10:18USDC-ORP

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

JAROD SEAMAN,
Plaintiff,
v.
BROOKE L. ROLLINS, Secretary,
U.S. Department of Agriculture,
Defendant.

---

Civil Case No. 6:26-cv-1984-MC

**COMPLAINT FOR RETALIATION, FAILURE TO ACCOMMODATE, EMPLOYMENT DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND PRIVACY ACT VIOLATION**
**BENCH TRIAL REQUESTED**

## I. INTRODUCTION

Plaintiff Jarod Seaman, a GS-12 Soil Conservationist and EQIP Program Manager with sixteen years of federal service at the U.S. Department of Agriculture Natural Resources Conservation Service, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 791, and the Privacy Act of 1974, 5 U.S.C. § 552a, for retaliation for protected EEO activity, failure to accommodate a documented disability, hostile work environment, employment discrimination based on race, and Privacy Act violations arising from the Agency's systematic use of records gathered through improper means to build a retaliatory conduct narrative against Plaintiff.

This case arises from a documented two-year campaign of retaliatory conduct orchestrated by Assistant State Conservationist Leo Preston and ratified and expanded by Greg Becker, Oregon State Conservationist, against Plaintiff following Plaintiff's protected EEO activity beginning in October 2023. The retaliation included repeated denial of Plaintiff's Salem duty station requests, interference with a competitive career development opportunity, denial of reasonable accommodation, a retaliatory internal inquiry launched seven days after Plaintiff's EEO complaint, and a pervasive hostile work environment. The Agency's primary justification for these adverse

118319

actions — that no space was available in the Salem field office — was proven false by the Agency's own public job postings listing Salem as an available duty station on two separate occasions while this action was being prepared for filing: USAJOBS Vacancy Announcement NRCS-26-13033608-DE-OR-ARS posted August 17, 2026, and Critical Vacancy VAC-21003 posted September 14, 2026 — the latter being substantively identical to the Area Programs Specialist position for which Preston pre-selected Bahm in 2024.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f) (Title VII), 29 U.S.C. § 794a (Rehabilitation Act), and 5 U.S.C. § 552a(g) (Privacy Act).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) and 42 U.S.C. § 2000e-5(f)(3) because Plaintiff resides in this District, the Agency maintains offices in this District, and the unlawful employment practices alleged herein were committed in this District.

3. Plaintiff has exhausted all administrative remedies as required by 29 C.F.R. § 1614.407. Plaintiff received the EEOC Office of Federal Operations decision on June 30, 2026. This Complaint is timely filed within ninety days of that receipt.

## III. PARTIES

4. Plaintiff Jarod Seaman is a citizen of the United States residing at 770 Shipping Street NE, Salem, Oregon 97301. Plaintiff is employed as a GS-0457-12 Soil Conservationist and EQIP Program Manager at the USDA Natural Resources Conservation Service Oregon State Office.

5. Defendant Brooke L. Rollins is the Secretary of the United States Department of Agriculture and is named in her official capacity as the head of the federal agency that employs Plaintiff. The Natural Resources Conservation Service is an agency within the U.S. Department of Agriculture.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff initiated EEO counselor contact on March 5, 2025. Plaintiff filed a formal EEO complaint on May 5, 2025, docketed as Agency No. FPAC-2025-00306.

7. The Agency issued a Final Agency Decision on January 25, 2026, finding no discrimination, no retaliation, and no hostile work environment on all six accepted issues — despite Plaintiff's complaint being filed primarily on reprisal grounds with race and disability as secondary bases.

8. Plaintiff timely appealed to the EEOC Office of Federal Operations on March 20, 2026. The OFO issued a decision affirming the FAD on June 30, 2026. OFO Docket No. 2026001289.

9. Plaintiff filed a Request for Reconsideration on July 23, 2026, which remains pending before OFO. The filing of this civil action terminates the administrative reconsideration proceedings pursuant to 29 C.F.R. § 1614.409.

10. Plaintiff has fully exhausted all available administrative remedies and this Complaint is timely filed within ninety days of receipt of the OFO decision.

## V. STATEMENT OF FACTS

### A. Background — Plaintiff's Federal Service Record

11. Plaintiff has been employed by USDA/NRCS for sixteen years. His Official Personnel File contains zero disciplinary actions, zero written counselings, zero performance warnings, and zero documented conduct concerns of any kind across sixteen years of federal service. His OPF reflects consistent promotions from GS-9 to GS-12, multiple cash performance awards, and step increases earned under supervisors who had direct daily oversight of his conduct and performance.

12. At all relevant times Plaintiff served as a Soil Conservationist GS-0457-12 and EQIP Program Manager at the NRCS Oregon State Office, with his official duty station located in Tangent, Oregon. Plaintiff's requests for reassignment and reasonable accommodation to the Salem field office — denied repeatedly on the grounds that no space was available — form the basis of Issues 1 and 3 of this Complaint.

### B. Prior Protected EEO Activity — October 2023

13. In October 2023 Plaintiff engaged in protected EEO activity by filing an EEO complaint involving an employee under Assistant State Conservationist Leo Preston's supervision. Preston was the responsible management official for that complaint and participated in the ADR process for it in his official capacity. Preston's participation gave him direct personal knowledge of Plaintiff's protected EEO activity before any of the adverse actions described herein occurred.

**C. Ethics-Prohibited Assignments — Race Discrimination and Criminal Statute Violation**

14. On October 24, 2023, USDA Ethics Specialist Margaret Connors issued a written determination under 18 U.S.C. § 208 confirming a criminal statute prohibition applicable to assignments being made to Plaintiff. This determination was forwarded to Plaintiff's supervisor Les Bachelor on November 2, 2023. Bachelor had written notice of the criminal prohibition eight months before prohibited assignments were made to Plaintiff in July 2024. The decision to assign Plaintiff ethics-prohibited work in July 2024 was made by Assistant State Conservationist Leo Preston — the same official who orchestrated the retaliatory conduct documented throughout this Complaint — despite his knowledge of the written criminal statute prohibition.

A similarly-situated Hispanic employee under supervisor Thomas Hoskins — who reported to Preston as second-level supervisor — was specifically protected from the same ethics-prohibited assignments during the same period. Hoskins confirmed in a sworn statement submitted to the administrative record that after consulting with Ethics Specialist Connors he was informed the Hispanic employee could not work on conservation applications due to the identical ethics prohibition. Hoskins ensured his employee was not assigned the prohibited work. Preston served as the second-level supervisor over both Hoskins and the Hispanic employee and had direct organizational awareness of Hoskins' consultation with Connors and the protective action taken on the Hispanic employee's behalf. Despite this awareness Preston simultaneously directed ethics-prohibited assignments at Plaintiff — an employee within his supervisory chain at the second level — without taking any protective action equivalent to what Hoskins provided for the Hispanic employee within the same supervisory chain.

Plaintiff — a white employee over the age of fifty — was selectively forced to perform ethics-prohibited work that could constitute a federal criminal violation under 18 U.S.C. § 208, while a similarly-situated Hispanic employee within the same supervisory chain was specifically protected from identical assignments. This differential treatment — documented by Hoskins' sworn statement in the administrative record — constitutes race discrimination under Title VII and is a component of both the hostile work environment alleged in Count III and the race discrimination alleged in Count I.

**D. Issue 1 — Denial of Salem Reassignment — January 27, 2025**

15. On August 28, 2024, Erin Kaczmarczyk, acting in her capacity as hiring official, offered Plaintiff the Salem NRCS field office as his duty station. The following day — August 29, 2024 — Kaczmarczyk rescinded the offer. In a Teams message dated August 29, 2024, Kaczmarczyk admitted: 'I messed up. Salem is absolutely not an available location... I've already spoken with Leo and to Greg and to HR and there is nothing more I can do.' This message confirms that the rescission originated with Preston, that State Conservationist Becker was part of the pre-decision

coordination, and that all three management levels had aligned before Plaintiff was informed. The stated reason for rescission was that no space was available in the Salem office. Kaczmarczyk subsequently became Plaintiff's first-line supervisor.

16. Following the federal return-to-office executive order, Plaintiff formally requested reassignment to the Salem NRCS field office as his duty station on January 27, 2025. The request was denied. The stated reason was that no seats were available in the Salem field office. No conduct concerns were mentioned at any point during this process. Plaintiff's request was not a discretionary preference — it was a direct response to a federal directive requiring employees to identify an official duty station for in-office work.

17. A Teams conversation dated February 26, 2025 documents Kaczmarczyk confirming that two cubicles were available in the Salem NRCS office at the time the reassignment was denied. The same conversation documents Becker stating he was 'waiting for Leo to retire' and that he wanted to 'give you a shot at behaving in the office' — conditioning Plaintiff's Salem access on his conduct to Becker's satisfaction — a statement made nine days before Plaintiff filed his formal EEO complaint on March 5, 2025, and following Plaintiff's prior protected EEO activity in October 2023 in which Assistant State Conservationist Leo Preston was the responsible management official.

18. On August 17, 2026, while Plaintiff's administrative proceedings were pending, the Agency publicly posted Vacancy Announcement NRCS-26-13033608-DE-OR-ARS on USAJOBS listing Salem, Oregon as an available duty station for a GS-12 NRCS position. On September 14, 2026, the Agency posted Critical Vacancy VAC-21003 on the NRCS Critical Vacancy Portal listing Salem NRCS Field Office as an available duty station for a GS-12 supervisory Area Resource Conservationist position — substantively identical to the Area Programs Specialist position for which Preston pre-selected Bahm in violation of federal hiring policy DR-4030-335-002. The number of NRCS Oregon employees assigned to the Salem field office has not decreased or changed since January 2025. The Agency's own public job postings — issued on two separate occasions while Plaintiff's administrative proceedings were pending — prove the no-space rationale was false at the time it was stated and throughout the period during which Plaintiff's requests were denied.

**E. Issue 2 — APS Non-Selection — January 14, 2025**

19. Plaintiff applied for the GS-12 Area Programs Specialist position under Vacancy Announcement NRCS-24-12462147-MP-OR-DD, open July 10-18, 2024, listing three Oregon duty station locations: Hillsboro, Redmond, and Tangent.

20. Preston pre-selected Matt Bahm for the APS position before Plaintiff's interview. The Agency's own HR specialist Anna Garcia confirmed in writing on May 8, 2025 that job offers during the interview process violate NRCS hiring policy DR-4030-335-002 and that at least five candidates must be interviewed before a selection is made.

21. The official USA Staffing non-selection notification was transmitted to Plaintiff on January 14, 2025, identifying the non-selection location as 'GS-0457-12 in Hillsboro, Oregon.' Preston retired on February 28, 2025 and gave no sworn statement at any point during the administrative investigation. Every justification attributed to Preston's selection reasoning in the Agency's administrative filings is unsworn hearsay from State Conservationist Becker — not from the selecting official himself.

22. Preston's stated justification — that Bahm had broader geographic experience — misrepresents the temporal context of that experience. At the time of selection Bahm was employed by another federal agency in Springfield, Oregon. Both Bahm and Plaintiff were Oregon-based federal employees at the moment of selection. Plaintiff's record included multi-location Oregon experience through his Acting ABRC service — experience Preston personally knew about because he called Medina to interfere with that detail immediately before the APS selection process.

**F. Issue 3 — Denial of Reasonable Accommodation — March 2, 2025**

23. Plaintiff has documented disabilities including anxiety, depression, and obsessive-compulsive disorder, supported by his treating physician's written recommendation for full telework as a reasonable accommodation.

24. On March 2, 2025, Plaintiff's reasonable accommodation request for the Salem duty station was denied. The stated reason was that no space or workstation was available in the Salem field office. No conduct concerns were mentioned. As established above the no-space rationale was false — two cubicles were available in the Salem office at the time of denial, as confirmed by Kaczmarczyk's contemporaneous Teams message and the Agency's own August 2026 USAJOBS posting as well as September 14, 2026 Critical Vacancy.

25. The Agency never engaged in the good-faith interactive process required by the Rehabilitation Act before denying Plaintiff's accommodation request.

**G. Issue 4 — ABRC Rotation Interference — March 1, 2024**

26. In early March 2024, Plaintiff applied through proper channels for an Acting Basin Resource Conservationist detail with supervisor Les Bachelor's written concurrence dated March 1, 2024. The application followed NRCS's publicly posted competitive ABRC solicitation process.

27. After Plaintiff's application was submitted Preston called ABRC supervisor Heather Medina and warned her about Plaintiff — stating that 'most people didn't get along with him' and to 'be cautious.' Despite this warning Medina offered Plaintiff the ABRC position because 'everyone deserved an opportunity.' Plaintiff served in the ABRC detail from March 18 through July 19, 2024. During four months of direct supervision Medina documented zero performance issues, zero written counselings, and zero behavioral concerns.

28. Preston's unsolicited interference with a competitive career development opportunity — immediately before the APS selection process in which Plaintiff was a candidate — constitutes retaliation for Plaintiff's October 2023 protected EEO activity.

**H. Issue 5 — Retaliatory Internal Inquiry — March 12, 2025**

29. Plaintiff filed his EEO complaint on March 5, 2025. The Agency's own EEO Assignment Letter from Specialist Rene Rodriguez, dated March 7, 2025, confirms March 5, 2025 as Plaintiff's official EEO contact date.

30. Becker's own sworn affidavit states: 'Around the date of 3/12/2025 I began to ask other employees about Jarod's qualifications and conduct.' March 5 to March 12 is seven days. Both dates are confirmed by Agency-authored documents. Becker launched a targeted inquiry into Plaintiff's conduct and qualifications seven days after Plaintiff filed his EEO complaint.

31. This inquiry produced a post-complaint conduct narrative that did not exist in any written communication to Plaintiff before March 5, 2025. From August 2024 through March 5, 2025 the Agency's sole stated reason for denying Plaintiff's Salem requests was physical — no space, no seats, no room. No behavioral concerns were communicated to Plaintiff during this entire period. The conduct narrative appeared for the first time at the April 11, 2025 ADR session — assembled through a retaliatory inquiry from sources with personal animus who were never identified in the Report of Investigation, never submitted affidavits, and were never cross-examined.

**I. Issue 6 — Hostile Work Environment**

32. The Agency subjected Plaintiff to a pervasive hostile work environment through a continuous pattern of retaliatory and discriminatory conduct including: ethics-prohibited work assignments made despite written notice of the criminal statute prohibition under 18 U.S.C. § 208, selectively applied against Plaintiff while a similarly-situated Hispanic employee was protected from identical assignments; a false conduct narrative assembled through Privacy Act-violating means and presented without disclosure or cross-examination opportunity; systematic denial of career advancement opportunities available to similarly-situated employees; conditioning of workplace benefits on the resolution of protected EEO activity; and the ongoing presence of an employee whose Privacy Act-violating conduct forms the basis of the retaliatory narrative.

**J. Post-Complaint Retaliation**

33. Following Plaintiff's March 5, 2025 EEO complaint and throughout the administrative appeal process, Defendant engaged in a continuing pattern of post-complaint retaliation including:

(a) Becker eliminated anonymous questions from all-staff meetings after Plaintiff submitted the Coffee with the State Conservationist FAQ — a document authored by Becker acknowledging a culture of employee fear and retaliation — as evidence in his EEO appeal;

(b) Becker personally appointed acting supervisors for Plaintiff on two separate occasions during the pendency of the appeal, and following the resignation of Plaintiff's first-line supervisor Erin Kaczmarczyk on October 6, 2025, personally selected Plaintiff's permanent replacement supervisor — maintaining continuous supervisory control over Plaintiff through officials of his own choosing throughout the entire period during which Plaintiff's active EEO appeal documented Becker's retaliatory conduct;

(c) Becker issued a blanket denial of all new leave requests on July 1, 2026 — the day after the OFO issued its decision affirming the FAD;

(d) The Agency posted a Salem duty station position on USAJOBS on August 17, 2026, and posted Critical Vacancy VAC-21003 listing Salem NRCS Field Office as an available duty station on September 14, 2026 — both while Plaintiff's reconsideration was pending — proving the no-space rationale that formed the basis of every Salem-related adverse action was false; and

(e) On August 25, 2026, Becker directly appointed Theresa Brehm — an employee whose Privacy Act violations are documented in Plaintiff's active EEO proceedings — to the Team 4 supervisory District Conservationist position with Salem as the main office, without competitive process, as an exercise of his personal prerogative as State Conservationist, while Plaintiff's reconsideration was actively pending before OFO.

**K. Privacy Act Violations**

34. Theresa Brehm was Plaintiff's cubicle neighbor at the NRCS Salem Field Office during Plaintiff's tenure as a Soil Conservationist at that location. Brehm systematically eavesdropped on Plaintiff's personal workplace conversations without his knowledge or consent. Brehm provided accounts of those conversations to Becker, who used them to assemble a post-complaint conduct narrative against Plaintiff beginning March 12, 2025 — seven days after Plaintiff's EEO complaint.

35. The Agency maintained records about Plaintiff gathered through Brehm's eavesdropping in violation of 5 U.S.C. § 552a(e)(2), which requires agencies to collect information directly from the individual to the greatest extent practicable when the information may result in adverse determinations about the individual's rights, benefits, or privileges. These records were never disclosed to Plaintiff during the investigation, never placed in the Report of Investigation, and never subjected to cross-examination. They were introduced for the first time at the April 11, 2025 ADR session — a confidential proceeding protected under 5 U.S.C. § 571 et seq. and 29 C.F.R. § 1614.470 — in violation of ADR confidentiality protections. The Agency subsequently used those records in formal EEO adjudication — through the FAD and administrative briefings — without Plaintiff's knowledge or opportunity to respond.

36. The Agency also maintained records describing how Plaintiff exercised his workplace rights in violation of 5 U.S.C. § 552a(e)(7), which prohibits agencies from maintaining records describing how individuals exercise rights guaranteed by the First Amendment unless expressly authorized by statute or the individual or unless pertinent to and within the scope of an authorized law enforcement activity.

37. Kim Gray, who had documented personal animus toward Plaintiff and never supervised him, provided additional accounts to Becker's inquiry without disclosure in the Report of Investigation. Gray never submitted an ROI affidavit and was never cross-examined. The Agency's use of Gray's undisclosed accounts in formal adjudication constitutes an additional Privacy Act violation.

**VI. LEGAL CLAIMS**

**COUNT I — RETALIATION AND RACE DISCRIMINATION UNDER TITLE VII**

(42 U.S.C. § 2000e-2, § 2000e-3(a))

38. Plaintiff incorporates by reference all preceding paragraphs.

39. Plaintiff engaged in protected EEO activity by filing an EEO complaint in October 2023 and by filing his formal EEO complaint on March 5, 2025.

40. Defendant subjected Plaintiff to adverse employment actions based on race and causally connected to his protected activity including: denial of Salem reassignment; pre-selected non-selection for the APS position; denial of reasonable accommodation; interference with the ABRC career development detail; selective assignment of ethics-prohibited work while a similarly-situated Hispanic employee was protected from identical assignments; a retaliatory internal inquiry launched seven days after his EEO complaint; and the post-complaint conduct described herein.

41. The causal connection between Plaintiff's protected activity and the adverse actions is established by: (a) the seven-day temporal proximity between Plaintiff's March 5 EEO complaint and Becker's March 12 inquiry, confirmed by both parties' own documents; (b) Becker's direct admission in SMF No. 42 that he conditioned Plaintiff's duty station access on the resolution of his EEO complaint; (c) the wholesale substitution of the Agency's stated rationale — from physical no-space to behavioral narrative — occurring immediately after the EEO complaint was filed; and (d) the pattern of post-complaint suppressive conduct documented herein.

42. The race discrimination is established by Preston's selective assignment of ethics-prohibited work to Plaintiff — a white employee over fifty — while a similarly-situated Hispanic employee within the same supervisory chain was specifically protected from identical assignments, as documented by supervisor Thomas Hoskins' sworn statement in the administrative record.

43. The Agency's stated reasons for each adverse action are pretextual. The physical no-space rationale — the sole basis stated for every Salem denial from August 2024 through March 2025 — is proven false by the Agency's own USAJOBS posting listing Salem as an available duty station in August 2026, Critical Vacancy VAC-21003 listing Salem NRCS Field Office as an available duty station on September 14, 2026, and by Kaczmarczyk's contemporaneous confirmation of two available Salem cubicles in February 2025. The behavioral rationale that replaced the physical rationale after the EEO complaint was assembled through a retaliatory inquiry seven days after the complaint from unsworn uncross-examined sources with personal animus, in violation of Privacy Act protections and ADR confidentiality requirements.

44. As a direct and proximate result of Defendant's retaliatory and discriminatory conduct Plaintiff has suffered and continues to suffer lost wages, lost career advancement opportunities, emotional distress, anxiety, depression, and aggravation of his documented OCD.

**COUNT II — FAILURE TO ACCOMMODATE UNDER THE REHABILITATION ACT**

(29 U.S.C. § 791; 29 C.F.R. § 1630.9)

45. Plaintiff incorporates by reference all preceding paragraphs.

46. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act. His documented disabilities — anxiety, depression, and obsessive-compulsive disorder — substantially limit major life activities. His treating physician provided a written recommendation for full telework as a reasonable accommodation.

47. Defendant denied Plaintiff's reasonable accommodation request on March 2, 2025, citing no available space or workstation in the Salem field office. That rationale was false — two cubicles were available at the time of denial as confirmed by Kaczmarczyk's contemporaneous Teams message, and the Agency subsequently posted Salem as an available duty station publicly on USAJOBS in August 2026 and again as Critical Vacancy VAC-21003 on September 14, 2026.

48. Defendant failed to engage in the good-faith interactive process required by the Rehabilitation Act before denying Plaintiff's accommodation request.

49. The requested accommodation — full telework — would not have imposed an undue hardship on the Agency. Plaintiff had been performing his duties successfully under a telework arrangement throughout the relevant period.

50. As a direct and proximate result of Defendant's failure to accommodate Plaintiff has suffered emotional distress, aggravation of his documented disabilities, and ongoing denial of a medically supported workplace accommodation.

51. The Agency's denial of Plaintiff's reasonable accommodation on a false physical rationale — now proven false by the Agency's own USAJOBS posting in August 2026 and Critical Vacancy VAC-21003 posted September 14, 2026, both listing Salem as an available duty station while Plaintiff's administrative proceedings were pending — takes on additional significance in light of the Agency's concurrent implementation of policies restricting reasonable accommodation approvals across the federal workforce, further reducing Plaintiff's ability to obtain the medically necessary accommodation denied through retaliatory means.

**COUNT III — HOSTILE WORK ENVIRONMENT**

(42 U.S.C. § 2000e et seq.; 29 U.S.C. § 791)

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Defendant subjected Plaintiff to severe and pervasive retaliatory and discriminatory conduct that altered the terms and conditions of his employment including: ethics-prohibited work assignments made despite written notice of a criminal statute prohibition under 18 U.S.C. § 208, selectively applied against Plaintiff while a similarly-situated Hispanic employee was protected from identical assignments; a false conduct narrative assembled through Privacy Act-violating means and used in formal adjudication without disclosure or cross-examination; systematic denial of career advancement opportunities; conditioning of workplace benefits on EEO complaint resolution; suppression of anonymous employee communications after Plaintiff's EEO filings; and appointment of a Privacy Act-violating employee to a supervisory position while Plaintiff's EEO proceedings were pending.

54. The hostile work environment was severe enough to alter the terms and conditions of Plaintiff's employment and was directly caused by Plaintiff's protected EEO activity and race.

**COUNT IV — PRIVACY ACT VIOLATION**

(5 U.S.C. § 552a(e)(2), (e)(7), (g))

55. Plaintiff incorporates by reference all preceding paragraphs.

56. Defendant violated the Privacy Act of 1974 by maintaining and using records about Plaintiff gathered through Theresa Brehm's systematic eavesdropping on Plaintiff's personal workplace conversations without his knowledge or consent, in violation of 5 U.S.C. § 552a(e)(2)'s requirement to collect information directly from the subject individual when the information may result in adverse determinations.

57. Defendant violated 5 U.S.C. § 552a(e)(7) by maintaining records describing how Plaintiff exercised his workplace and EEO rights without statutory authorization.

58. Defendant's Privacy Act violations were intentional and willful — the post-complaint inquiry was launched specifically to assemble adverse information about Plaintiff from sources whose

accounts were gathered through improper means, for use in formal EEO adjudication against the employee who had just filed a protected complaint.

59. As a direct result of Defendant's Privacy Act violations Plaintiff suffered adverse employment determinations based on improperly gathered records, emotional distress, and ongoing reputational harm within the Agency.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Find that Defendant violated Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the Privacy Act of 1974 as alleged herein;

(2) Grant Plaintiff's requested permanent reasonable accommodation of full telework as supported by his treating physician's written recommendation;

(3) Order that Plaintiff not be required to travel to or report in person to any NRCS Oregon field office or facility, permanently, to prevent further Privacy Act violations, ongoing surveillance of Plaintiff's conduct, and the continued assembly of retaliatory documentation by individuals operating within the supervisory structure controlled by State Conservationist Greg Becker;

(4) Award Plaintiff retroactive backpay, front pay, prejudgment and post-judgment interest, and all other economic relief representing lost wages, lost step increases, lost advancement opportunities, and all other economic losses from the date of each adverse action through the date of final judgment, in amounts to be proven at trial;

(5) Award Plaintiff compensatory damages up to the statutory maximum of $300,000 for documented emotional distress, anxiety, depression, and OCD worsened by the hostile work environment and the Agency's retaliatory and discriminatory conduct;

(6) Order expungement of all shadow file materials and post-complaint conduct documentation gathered through improper means from Plaintiff's official and unofficial Agency records;

(7) Order permanent removal of State Conservationist Greg Becker from any supervisory authority over Plaintiff's employment;

(8) Order a formal disciplinary referral to the appropriate USDA authority for Becker's pattern of retaliatory conduct and three documented false sworn statements;

(9) Order a finding that the accounts provided by Theresa Brehm and Kim Gray were obtained through means violating the Privacy Act of 1974, and order expungement of all records derived from those accounts from Plaintiff's official and unofficial Agency files;

(10) Order a formal referral to the appropriate USDA authority for investigation and disciplinary action — up to and including removal from federal service — against Brehm and Gray for their participation in assembling Plaintiff's conduct narrative through means violating federal law;

(11) Order injunctive relief prohibiting Defendant from taking any adverse action against Plaintiff in retaliation for filing this action;

(12) Award Plaintiff attorney fees and costs as permitted by law; and

(13) Grant such other relief as this Court deems just and proper.

## VIII. BENCH TRIAL REQUEST

Plaintiff respectfully requests that this matter be tried before the Court without a jury. Plaintiff waives his right to a jury trial pursuant to Federal Rule of Civil Procedure 39(a) and requests a bench trial. This case involves complex documentary evidence, legal analysis of federal employment discrimination standards, and administrative record review that is particularly well-suited for adjudication by the Court.

Respectfully submitted,

Jarod Seaman
Plaintiff, Pro Se
770 Shipping Street NE
Salem, OR 97301
Jarod.Seaman@usda.gov
503-949-6351
September 25, 2026

## VERIFICATION

I, Jarod Seaman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on September 25, 2026, at Salem, Oregon.

Jarod Seaman; Plaintiff, Pro Se